Filed 12/30/20  In re N.C. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re N.C., a Person Coming Under the Juvenile Court Law. | B304657 (Los Angeles County Super. Ct. No. 19CCJP02749C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>F.C.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Philip L. Soto, Judge.  Affirmed.

Patricia G. Bell, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

_____

## I.   INTRODUCTION

After terminating jurisdiction over her three children, the juvenile court entered an exit custody order granting F.C. (mother) joint legal and physical custody of her youngest child, N.C., but placing the child in the residence of J.H. (father) and limiting mother's visitation rights to unmonitored overnight visits every other weekend.  On appeal, mother contends the court abused its discretion by limiting her visitation rights without first considering the best interests of N.C.  We affirm.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   *Prior Appeal*

In March 2019, N.C.'s family came to the attention of the Department of Children and Family Services (the Department) based on a report of a domestic violence incident between mother and Z.J., the father of one of her sons.  During the incident, Z.J. confronted mother in an aggressive manner as she was dropping her son off for a visit.  Mother exited her car with a knife, leaving N.C. inside, and as Z.J. approached her in a threatening manner,

stabbed him in the wrist. (*In re J.M. et al.* (June 2, 2020, B298684) [nonpub. opn.].)

On May 1, 2019, the Department filed a Welfare and Institutions Code section 300[1] petition, alleging as to N.C.[2] that mother's most recent incident of domestic violence with Z.J., as well as her past violent and verbal altercations with him, placed N.C. and her two older siblings at risk of harm.

At the jurisdiction/disposition hearing, the juvenile court sustained the petition and declared mother's children dependents of the court. After N.C.'s counsel advised the court that pursuant to a family court order,[3] father had physical custody of N.C., the court ordered that N.C. be placed with father and that mother be granted "'whatever visits the family law court has given her with regards to [N.C.].'" Mother timely appealed from the jurisdiction and disposition orders. (*In re J.M. et al., supra*, B298684.)

On June 2, 2020, we issued the opinion in mother's first appeal which affirmed the juvenile court's jurisdictional order, as to N.C. only, and dismissed as moot the appeal from the other jurisdictional orders and all of the dispositional orders. (*In re J.M. et al., supra*, B298684.)

---

[1]    All further statutory references are to the Welfare and Institutions Code.

[2]    The petition also included allegations as to mother's two older children.

[3]    On May 17, 2019, the court in an ongoing family law proceeding between mother and father issued a custody order granting father sole legal and physical custody of N.C. The court granted mother unmonitored visitation with N.C. every other weekend.

B.    *Hearing on Section 388 Motion and Termination of Jurisdiction Under Section 364*

1.    Section 388 Motion

On November 20, 2019, while her prior appeal was pending, mother filed a request to change court order pursuant to section 388.  According to mother, following the juvenile court's dispositional order placing N.C. with father, his wife alleged domestic abuse against him and filed for a restraining order.  Moreover, father and N.C. were staying with a friend because they had been "kicked out of the house," and father's wife had instituted divorce proceedings against him.  Mother maintained that she would provide a more stable living environment for N.C. "during this transition" and that, if N.C. were placed with her, the child could bond with her two older siblings.  Accordingly, mother requested the juvenile court to order that N.C. be placed in her home.  The court set the motion for hearing on December 12, 2019, the same day as the scheduled section 364 judicial review hearing.

2.    Status Review Report

On November 26, 2019, the Department filed a status review report, stating that since the last report, N.C. had resided primarily with father.  Father was in the process of moving and was currently living with a friend whose house the social worker had reviewed and found appropriate.  Father had been "very cooperative" with the Department and, in particular, with scheduling monthly social worker visits with N.C.  He was also

4

"very patient and loving" with N.C. during the social worker's visits.

N.C. appeared well-bonded to both mother and father, was doing well in preschool, and remained healthy "with no major health or safety concerns observed or reported."

During the reporting period, the Department had received two referrals involving father. In May 2019, the Department received an allegation of "general neglect" of N.C. But after investigation, the Department closed the matter as unfounded. In June 2019, the Department received another report from a caller alleging that when mother picked up N.C. for a weekend visit, she noticed a bruise on the child's ear. The Department also closed that matter as unfounded.

### 3. Last Minute Information

On December 12, 2019, the Department filed a last minute information reporting that the petition for a restraining order against father filed by his wife had been denied. According to father, he and N.C. would be moving back into the family home the following weekend.

### 4. Section 388 Report

On January 9, 2020, the Department filed a section 388 report, in which it provided further information about the two referrals alleging abuse and neglect of N.C. involving father in May and June 2019. The Department explained that after an investigation, both referrals were deemed unfounded. The Department also gave further information about the petition for a

protective order filed against father by his wife. According to the wife, father pushed and shoved her injuring her hand. Subsequent to that incident, father allegedly threatened to hit his wife; and he also threatened to take his own life and N.C.'s. In addition, father had allegedly punched holes in the wall, threatened to destroy the wife's property, and called her a "'whore'" in front of N.C. The wife asked the court to remove father from her home before he killed her.

Although father's wife had requested and obtained a temporary restraining order against him, a permanent restraining order was subsequently denied. Father and his wife both denied that there was domestic violence in their relationship and blamed mother for any marital issues they were experiencing.

A social worker reported that the parents spoke over one another and had to be reminded to keep the conversation about the child. Mother stated that "'[t]here's always drama involved when he brings his wife [to exchanges].'" Father reported that whenever he and mother exchanged custody of N.C. at the police station, there was conflict between the two. The police had to tell mother to stop making negative comments about father's wife during the exchanges. On one occasion, father was late to the police station and mother left, which required the police to escort father to mother's home to retrieve N.C. Father's wife stated that she tried to help with exchanges, but that mother did not want N.C. to be around the wife and therefore had made false allegations against the wife and had sought a restraining order against her.

The director of N.C.'s preschool reported that N.C. was "'doing great'" in school and that she "'lights up when she sees

6

her father . . . .'" The Department also advised that N.C. was "happy, well cared[-]for and bonded to both [of her] parents."

### 5. Last Minute Information

On January 10, 2020, the Department advised the juvenile court that, in its view, it would not be in the best interest of N.C. "to have a joint custody order due to [her] parent[s'] inability to communicate and/or agree upon any decision." The Department recommended against any change to the current custody order and that "the parents address all changes to their custody order with the [f]amily [l]aw [c]ourt . . . ."

### 6. Hearing and Order

At the January 13, 2020, joint hearing on the section 388 motion and the section 364 review, the juvenile court marked and received the parties' documentary exhibits[4] and heard their arguments. The court then ordered the following: "We will grant the request for [a home-of-parents] order for mother and [father] under the following conditions: Primary residence remains with father. Mother is to continue to have unmonitored, overnight visits every other weekend. Exchanges are to be done at a local police or sheriff's station in the lobby. Only the parents are ordered to attend exchanges. There's to be no derogatory or

_____

[4] Mother's exhibit B was a Los Angeles Police Department investigative report which indicated that on December 4, 2019, mother advised the police that two days earlier father had posted a nude photo of mother without her permission on a phone app that they used to communicate.

7

demeaning remarks made toward one another by the parents directly or indirectly to the child nor in any communications between the parents including any photographs which may be of embarrassment to either parent . . . . [¶] . . . [¶] We will close [N.C.'s] case finding there's no further need for judicial oversight or intervention. . . . Jurisdiction is terminated . . . ." The court then asked that mother's counsel prepare "that family law order up."

The custody order subsequently prepared by counsel specified that the parents would have joint legal and physical custody, but that N.C.'s primary residence would be with father. The order granted mother visitation every other weekend. The juvenile court filed the order on January 17, 2020. Mother filed a timely notice of appeal from the custody order.

## III. DISCUSSION

A. *Legal Principles and Standard of Review*

"'When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make "exit orders" regarding custody and visitation. [Citations.] Such orders become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court. [Citation.]' [Citation.]" (*In re A.C.* (2011) 197 Cal.App.4th 796, 799.) In issuing an exit order under section 362.4, the juvenile court's goal in assigning custody is to serve "the best interests of the child." (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712; *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268 ["When making a custody determination in any

8

dependency case, the court's focus and primary consideration must always be the best interests of the child"].)

"We normally review the juvenile court's decision . . . to issue a custody (or 'exit') order pursuant to section 362.4 for abuse of discretion . . . ." (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) ""'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'"'" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.)

B.      *Custody Order*

Mother contends that the juvenile court abused its discretion when it issued the exit custody order that limited her visitation rights with N.C. According to mother, because the court's order granting her joint physical custody of N.C. implicitly found that a shared custody arrangement was in the best interest of the child, there was no rational basis upon which the court could have nevertheless limited mother's visitation with N.C. We disagree.

Here, the evidence showed that N.C. was thriving in the current custody arrangement and that mother and father continued to engage in conflict during exchanges, including conflict that required police intervention. On this record, the juvenile court could have reasonably concluded that maintaining the status quo on mother's visitation rights, avoiding further opportunities for conflict between the parents during exchanges, and stability in N.C.'s residence was in N.C.'s best interest. The

court's order also explicitly contemplated further proceedings in the ongoing family law matter between father and mother in which the family court could modify the custody order. When viewed in that context, the juvenile court's order was not arbitrary or capricious, and, contrary to mother's assertion, it reflected a reasoned consideration of N.C.'s best interests under the current circumstances. Thus, the visitation limitation, pending further consideration by the family law court, was not an abuse of discretion.

## IV.   DISPOSITION

The exit custody order as to N.C. is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

BAKER, J.